# Ebert, Appellant, *v.* Kaufmann.

*Equity—Sale of business—Agreement not to do business—Estoppel—Laches.*

Where a person sells a business of baking and catering under an agreement not to engage in the same business within a certain time thereafter and within certain limits, and almost immediately afterwards starts the business of catering within the forbidden limits, the other party to the agreement or his assignee, cannot maintain a bill in equity for an injunction against the seller, where it appears that the latter began the business of catering but not baking shortly after the sale, that the complainant aided and encouraged him in such business, saw him expend money therein, and delayed for a year and a half before filing the bill.

Argued Oct. 6, 1909. Appeal, No. 25, Oct. T., 1909, by plaintiff, from decree of C. P. No. 3, Phila. Co., Sept. T., 1907, No. 3,872, dismissing bill in equity in case of Carl Ebert v.

William Kaufmann. Before RICE, P. J., HENDERSON, MOR-RISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

MOSCHZISKER, J., found the facts to be as follows.

1. William Kaufmann for several years carried on the business of a baker, caterer, confectioner and ice cream dealer at No. 8103 Frankford avenue, in the city of Philadelphia.

2. On May 3, 1905, William Kaufmann sold said business to Louis Ebert for $3,500, $3,000 in cash and a note for $500, possession to be taken May 20, 1905, and received on account $150, the balance of cash to be paid May 18, 1905, the following paper being then signed:

"PHILADELPHIA, 5–3–05.

"W. M. Kaufmann,

"Sold to Louis Eberts Cake Bakery and contents 8103 Frankford Ave., and Mill St., Good-will, stock and fixtures for Thirty-five hundred dollars. Three Thousand dollars cash; Five hundred in 6 mo. at 3% interest; to be taken possession of May 20, 1905.

" Cash on acct. One hundred and Fifty Dollars.

" Cash to be paid May 18, 1905.

" LOUIS EBERT,
" WM. KAUFMANN."

3. At the time of this sale it was agreed by William Kaufmann that he would not engage in the same business within ten years within five miles of No. 8103 Frankford avenue.

4. On May 20, 1905, the note was given and the balance of the purchase money paid by Louis Ebert to William Kaufmann, and the agreement restricting Kaufmann was then put into writing by Kaufmann and signed by him, as follows:

"PHILADELPHIA, PA., May 18, 1905.

"Received of Mr. Louis Ebert of Philadelphia thirty-five hundred dollars, thirty hundred cash and five hundred on three months' note for good-will and fixtures, horses & wagons and everything on premises 8103 Frankford Ave. belonging to a Steam Bakery, Confectionery, Ice Cream and Catering

Business, and I hereby bind myself under penalty of five thousand dollars not to engage in the same business within ten years within 5 miles of the present location.

                                   " (Signed)   WM. KAUFMANN."

5. On August 1, 1905, Louis Ebert sold the business so purchased by him from the said William Kaufmann to Carl Ebert, the complainant in this case, in which sale was included all the stock and fixtures pertaining to said business, together with the good-will thereof, to the same extent and as fully as the same was then vested in said Louis Ebert by virtue of the sale thereof made to him by the said Kaufmann. At the time of this purchase by Carl Ebert he had full knowledge of the conditions entered into by Kaufmann restricting him from engaging in the same business, as before found.

6. Carl Ebert paid a full legal consideration for the purchase of the business, and went into possession thereof and is still in possession thereof at the location before mentioned.

7. The defendant, William Kaufmann, lives at No. 8531 Frankford avenue, which is about four squares from the place of business of the complainant.

8. On June 1, 1906, the defendant, William Kaufmann, advertised himself as a caterer at No. 8531 Frankford avenue, prepared to serve weddings, receptions, banquets, luncheons, etc., in certain local newspapers and by sending out a circular, as shown on p. 7 et seq., of the notes of testimony.

9. In March, 1906, William Kaufmann, the defendant, came to the complainant and told him that there was to be a wedding in the neighborhood, and that Mr. Travis, the man who was to give the reception, intended to go to another caterer, and that he, Kaufmann, had secured the contract for the work. Kaufmann said to the complainant, "I thought I would do the work so the work would not go to the city. Will you make the cakes for me?" The complainant testified, "At first I hesitated a moment, and at last I said, 'Yes, sir,' and that was all the conversation that took place." The complainant made the cakes and sold them to Kaufmann, knowing that Kaufmann was to act as caterer in violation of the terms

of the written contract made with Louis Ebert on May 18, 1905. The complainant allowed Kaufmann to use his wagon, china and linen and equipment necessary in carrying out this engagement.

10. Subsequent to that date William Kaufmann, the defendant, continued to do catering business and gave to the complainant several orders to supply him with goods. The complainant accepted and carried out these orders, knowing that Kaufmann was purchasing the goods from him in order to act as caterer in violation of the terms in the written contract of May 18, 1905. The complainant furnished the defendant with linen and napkins in carrying out one of these engagements.

11. No objection was made by the complainant to the fact that Kaufmann was acting as caterer for various functions until about the time of the filing of the bill in equity in November, 1907.

12. William Kaufmann, the defendant, has not opened a store at the location No. 8531 Frankford avenue for a baker shop, steam bakery, confectionery or ice cream place, but simply has a sign out in front of his door stating that he is a caterer, and the only business carried on by him is the catering business.

13. The catering end of the business purchased by Louis Ebert from William Kaufmann, and sold by Louis Ebert to the complainant, was not the main or principal branch of the business. The principal part of the business was the bakery, and the next most important part was ice cream, the catering part being a minor but substantial branch of the business.

14. From March 16, 1906, to March 3, 1908, the defendant was engaged in the catering business and filled some twenty catering orders, the profit from which amounted to at least $150. In these orders were included at least four for which the complainant furnished the supplies and to some of them the equipment, and one other reception where the complainant was present as a guest.

15. The defendant, Kaufmann, has gone to a considerable expense in equipping himself for carrying on the catering busi-

ness, all of which was incurred after March 16, 1906, the date when the complainant first had knowledge of the fact that the defendant was engaging in that business, said defendant having purchased a wagon, linen, plates, etc., as an equipment. After having incurred this expense, the defendant and the complainant became business enemies, and after that the bill was filed.

### CONCLUSIONS OF LAW.

The court has reached and states the following conclusions of law:

1. The terms of the written agreement of May 18, 1905, were part of the sale from William Kaufmann to Louis Ebert, consummated May 3, 1905.

2. The catering business as recently carried on by the defendant would, in the absence of a waiver on the part of the complainant, be a breach of the covenant of the defendant of May 18, 1905, not to engage in the business sold by him on May 3, 1905.

3. The complainant, by his acquiescence and consent, and by taking an active part in the catering done by the defendant, has waived his right under the contract of May 18, 1905, to have the defendant restrained from continuing in said business, so that he is now estopped from asking the relief prayed for in the bill.

4. The bill must be dismissed at the costs of the complainant.

*Error assigned* was decree dismissing the bill.

*J. S. Freeman*, for appellant, cited: Patterson v. Lytle, 11 Pa. 53; Beaupland v. McKeen, 28 Pa. 124; Miller's App., 84 Pa. 391; Hill v. Epley, 31 Pa. 331; Chapman v. Chapman, 59 Pa. 214; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; Com. v. Moltz, 10 Pa. 527; Ryman v. Gerlach, 153 Pa. 197; O'Connor v. Clark, 170 Pa. 318; Rhawn v. Edge Hill Furnace Co., 201 Pa. 637.

*Charles J. Sharkey*, with him *F. Pierce Buckley*, for appellee, cited: Fruit Co. v. Roberts & Co., 8 Pa. Superior Ct.

500; Hohenstein v. Perelstine, 37 Pa. Superior Ct. 540; Snyder v. Smyth, 224 Pa. 36; McIntosh v. Ropp, 222 Pa. 606; Tozier v. Brown, 202 Pa. 359.

OPINION BY ORLADY, J., March 3, 1910:

The defendant conducted a business of baker, caterer, confectioner and ice cream dealer, and on May 18, 1905, sold his general business to Louis Ebert and gave the following receipt: "Philadelphia, Pa., May 18, 1905. Received of Mr. Louis Ebert of Philadelphia $3500., $3000 cash, and $500. on three months' note, for good will and fixtures, horses and wagons and everything on premises 8103 Frankford Ave., belonging to a steam bakery, confectionery, ice cream and catering business, and I hereby bind myself under penalty of $5000 not to engage in the same business within ten years within five miles of the present location. Signed: William Kaufmann."

Some months thereafter Louis Ebert sold the business purchased as above to his brother Carl Ebert, the complainant in this case. In the spring of 1906, Kaufmann who had removed to 8531 Frankford Ave., commenced to do a catering business and advertised in local newspapers that he was prepared to serve at weddings, receptions, banquets, luncheons, etc. On November 1, 1907, this bill in equity was filed, praying for an injunction to enjoin and restrain Kaufmann from carrying on the catering business and for an accounting. After a demurrer to the bill had been overruled, an answer was filed, testimony was taken, and on final hearing, the bill was dismissed.

We have carefully gone over the testimony and agree fully with the conclusions reached by the court below. The course of business between the parties, the acquiescence and consent by Ebert that Kaufmann should solicit business, and in his effectually aiding him in complying with his contracts, the expenditures incurred by Kaufmann with the knowledge of Ebert in operating the catering business, taken with his delay in asking for equitable relief, fully warranted the court in finding that the plaintiff was chargeable with such laches,

and that he was estopped from asking the relief prayed for in the bill.

The assignments of error are overruled and the judgment is affirmed.